# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

PAUL B. CANALE, M.D.,

        Plaintiff,

vs.

SAHARA OUTPATIENT SURGERY CENTER, LTD., a Nevada limited partnership, et al.,

        Defendants.

Case No.: 2:18-cv-01020-GMN-VCF

**ORDER**

Pending before the Court is the Motion to Dismiss the Complaint, (ECF No. 6), filed by Defendants Sahara Outpatient Surgery Center, Ltd. ("Sahara") and Surgicare of Las Vegas, Inc. ("Surgicare") (collectively "Surgery Center Parties"). Paul B. Canale, M.D. ("Plaintiff") filed a Response, (ECF No. 12), and Surgery Center Parties filed a Reply, (ECF No. 18).

Also pending before the Court is Defendant Lance Hickman's ("Hickman's") Motion to Dismiss the Complaint, (ECF No. 26). Plaintiff filed a Response, (ECF No. 28), and Hickman filed a Reply, (ECF No 31).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part**, **without prejudice**, Defendants' Motions to Dismiss.

# I.    BACKGROUND

Plaintiff is a medical doctor specializing in orthopedic surgery. (Comp. ¶ 11, ECF No. 1-2). In 1992, while serving as a medical practitioner in Las Vegas, Nevada, Plaintiff received a Confidential Private Offering Memorandum, which offered an investment opportunity in a Las Vegas, Nevada hospital under the business title of Las Vegas Surgery Hospital, Ltd. (*Id.* ¶¶ 11–12). That Memorandum offered Plaintiff, and other potential investors, a chance to purchase up to forty limited partnership "Units" in Las Vegas Surgery Hospital, Ltd. (*Id.*).

Plaintiff subsequently purchased one Unit for the sum of $12,000.00, and signed a Subscription Agreement to memorialize his purchased interest. (*Id.* ¶ 13). Surgicare, as the General Partner of Las Vegas Surgery Hospital, Ltd., accepted Plaintiff's Subscription Agreement and purchase price on February 11, 1993. (*Id.* ¶¶ 4, 13). Roughly eight months later, Las Vegas Surgery Hospital, Ltd. changed its name to Sahara Outpatient Surgery Center, Ltd. ("Sahara"), and began operating a hospital in Las Vegas, Nevada. (*Id.* ¶¶ 14–15).

Sahara operated under a "Limited Partnership Agreement," dated December 28, 1992 ("LPA 1992"). (*Id.* ¶ 14). The LPA 1992 governed business operations, including who qualified as a "Limited Partner" and standards for changes to the LPA 1992. (*Id.* ¶¶ 16–21).

The LPA 1992 underwent several amendments while Plaintiff was an investor in Sahara, the first of which occurred in 1996 and involved a "split" in Units from 100 to 1000. (*Id.* ¶ 22). That split meant each "currently outstanding Unit" would be divided into 10 Units. (*Id.*). A second amendment in 2005 again "split" each outstanding Unit into two, and also changed the standard for a "Majority in Interest" under the LPA 1992. (*Id.* ¶ 23).

On September 5, 2014, Sahara sent all investors a proposed amendment to the LPA 1992. (*Id.* ¶ 26). Relevant to this case, that proposed amendment changed the requirements for an investor to be a Limited Partner; and it also changed the Partnership and General Partner's ability to repurchase a Limited Partner's Units at a certain, agreed-upon price. (*Id.*). For example, the amendment included a "Physician Eligibility Requirement" and a "Physician Investor" requirement so that an investor "must perform at least one-third of his or her procedures that are on the Medicare-approved ASC procedure list at the Center." (*Id.* ¶ 31). Plaintiff alleges that he did not consent or agree to the proposed change; but the amendment nonetheless passed on November 20, 2014 ("LPA 2014"). (*Id.* ¶¶ 27–29).

Roughly one year later, Hickman, acting as Surgicare's agent, sent a letter to Plaintiff explaining that, "pursuant to the terms of the [LPA 2014]," Surgicare exercised its option to

repurchase Plaintiff's Units because Plaintiff did not meet the "Physician Eligibility Requirements" as defined in the LPA 2014. (*Id.* ¶¶ 5, 33–34). Plaintiff accordingly received $16,880.00 for his repurchased Units. (*Id.* ¶ 35).

On April 17, 2018, Plaintiff filed his Complaint against Sahara, Surgicare, and Hickman (collectively "Defendants") in the District Court of Clark County, Nevada ("Nevada State Court"). (*Id.* at 1). Plaintiff's Complaint alleges nine causes of action associated with the repurchase of his Units: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) declaratory relief; (4) accounting; (5) conversion; (6) breach of fiduciary duties; (7) securities fraud; and (8) punitive damages. (*Id.* ¶¶ 38–92). Defendants then removed this matter from Nevada State Court to this Court on June 5, 2018. (Pet. Removal, ECF No. 1).

Roughly two weeks after removing Plaintiff's Complaint to this Court, Sahara and Surgicare filed their Motion to Dismiss Plaintiff's Complaint, (ECF No. 6). Hickman filed a separate Motion to Dismiss Plaintiff's Complaint, (ECF No. 26), about three months later.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1129 (9th Cir. 2008). Rule 8(a)(2) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Prolix, confusing complaints" should be dismissed because "they impose unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad

faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when deficiencies in the complaint clearly cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### III. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint in its entirety by arguing that Plaintiff's claims are either contradicted by the documents on which Plaintiff's claims rely, barred by the applicable statute of limitations, or supported by legal conclusions and boilerplate allegations that fail to state a plausible claim. (Surgery Center Parties' MTD 2:3–10, ECF No. 6); (Hickman's MTD 2:13–3:25, ECF No. 26). In analyzing the sufficiency of Plaintiff's Complaint, the Court begins with Plaintiff's seventh claim for federal securities fraud in violation the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b)—the only federal cause of action in Plaintiff's Complaint, and the basis for the Court's jurisdiction after Defendants removed this matter from Nevada State Court. (*See* Pet. Removal 2:10–23, ECF No. 1).[1]

#### A. Federal Securities Fraud pursuant to 15 U.S.C. § 78j(b)

Defendants argue that the Court should dismiss Plaintiff's federal securities fraud claim because Plaintiff did not file the claim within the applicable statutory limitations period, and because Plaintiff's allegations do not reveal a plausible claim.[2] (*See* Surgery Center Parties' MTD 16:10–23:7, ECF No. 6). "Federal securities fraud claims 'may be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years

---

[1] Plaintiff's seventh claim appears to assert both federal and state law securities fraud violations. (Compl. ¶¶ 75–87, ECF No. 1-2). The Court's discussion addresses only the federal portion of the claim.

[2] Plaintiff's seventh claim for securities fraud does not specify which named defendants the claim applies to, unlike Plaintiff's other claims. (*See id.* 14:12–13). The Court infers the claim's applicability to all Defendants based on the relevant allegations referencing all Defendants. (*See id.* ¶¶ 68–77).

after such violation.'" 28 U.S.C. § 1658 (2012); *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1205 (9th Cir. 2012). "To state a claim under Section 10(b), a plaintiff 'must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Thompson v. Paul*, 547 F.3d 1055, 1061 (9th Cir. 2008) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008)). Further, Plaintiff "must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 109 Stat. 737." *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 793–94 (9th Cir. 2017). FRCP 9(b) requires that Plaintiff "state with particularity the circumstances constituting fraud"; and PSLRA requires that Plaintiff plead with particularity both falsity and scienter. *Id.*

### i. *Statute of Limitations*

Plaintiff contends that he timely brought his securities fraud claim because he discovered the violation through an email on May 3, 2016, and subsequently filed the Complaint one year and eleven months later. (Compl., ECF No. 1-2) (filed on April 17, 2018); (Email, Ex. A to Resp., ECF No. 12-1). Plaintiff's contention and corresponding evidence in the Response could arguably place the federal securities fraud claim within the applicable limitations period. *See Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012) (explaining that, after inquiry notice, the limitations period begins when a "reasonably diligent plaintiff from that point forward would have discovered the violations").

However, Plaintiff's Complaint does not include the May 3, 2016 email from which he allegedly discovered Defendants' securities fraud violation. (*See* Resp. 24:8–12). Nor does Plaintiff's Complaint allege a May 3, 2016 discovery of the securities fraud violation. Rather, Plaintiff's securities fraud claim centers around the repurchase of his Units on October 19,

2015, followed by a broad statement that he discovered the violations when he received all amendments and restatements of the LPA 1992, for which the Complaint does not provide any date. (Compl. ¶¶ 80–83). Thus, from the face of the Complaint, the statute of limitations appears to have begun on October 19, 2015, and expired in October 2017. Because Plaintiff filed the Complaint in 2018, the federal securities claim would be untimely.

Plaintiff seeks leave to amend his Complaint to include allegations about the May 3, 2016 email, and the corresponding discovery of the securities fraud violation. (Resp. 24:8–12). The Court's discussion below concerning leave to amend addresses whether Plaintiff may file an amended Complaint to include that additional information.

### ii. *Merits of Plaintiff's Securities Fraud Claim*

Even if the applicable limitations period does not bar Plaintiff's securities fraud claim, the claim nonetheless fails on the merits under the Complaint's current allegations. To explain, Plaintiff pleads his federal securities fraud claim in the alternative, meaning it is only viable if the Court finds the LPA 2014 enforceable. (Compl. 14:12–13); (Resp. 21:11–21). However, the LPA 2014's enforceability would defeat the claim's essential element of reliance on omissions or misrepresentations which allegedly caused Plaintiff's harm. *See Thompson v. Paul*, 547 F.3d 1055, 1061 (9th Cir. 2008).

The reliance element of a securities fraud claim under 10(b) requires a showing that alleged misrepresentations caused the plaintiff to engage in a transaction, which then caused the complained of harm. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). In the instance of an omission serving as the basis for a securities fraud claim, "positive proof of reliance" may not be required, and instead may be presumed. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972). Nevertheless, courts will not presume reliance based on omissions when no reasonable investor could have been influenced by the omission. *See*

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (citation omitted); *Affiliated Ute Citizens of Utah*, 406 U.S. at 153.

Here, Plaintiff bases his alternative claim of securities fraud on misrepresentations and omissions that caused the "repurchase" of Plaintiff's Units. (Compl. ¶¶ 75–87). Plaintiff explains that, if the Court finds the LPA 2014 valid, the repurchase of his Units by Surgicare was an effort to "defraud [Plaintiff] of his investment." (*Id.* ¶¶ 81–83). More specifically, Plaintiff alleges Defendants "did not disclose that Federal law did not require the changes that were made to the LPA 1992 and that such changes were made for another purpose not disclosed in the materials sent to the Limited Partners at the time they were being asked to consent to and vote upon the proposed Amendment and Restatement." (*Id.* ¶ 32).

A valid LPA 2014, however, means that the repurchase of Plaintiff's Units did not require any consent or decision by Plaintiff. Rather, the repurchase of a Limited Partner's Unit would occur if: (1) the Limited Partner failed to satisfy the LPA 2014's "Physician Eligibility Requirements"; and (2) the "Partnership" or the "General Partner" exercised their option to purchase the Units of a Limited Partner who failed to meet the requirements. (LPA 2014 at 12–13, 39–41, Ex. 3 to MTD, ECF No. 6-4).[3] Indeed, the LPA 2014 explicitly disclosed the Physician Eligibility Requirements and the consequence of repurchase for failing to comply. Article XVI, Section 16.9 of the LPA 2014 states:

> In the case of a Limited Partner that is an individual, the General Partner shall have the option and, if the General Partner does not exercise its option, the Partnership shall have the option to purchase such Limited Partner's Units . . . if such Limited Partner ceases either (A) to maintain his or her credentials to

---

[3] Plaintiff's Complaint does not include the LPA 2014 or related exhibits revealing the language of the LPA 2014 and LPA 1992. Nevertheless, Plaintiff's Complaint references the agreements, and Sahara and Surgicare provided copies of the documentation as part of their Motion to Dismiss. (*See* Surgery Center Parties' MTD, ECF Nos. 6-2 to 6-6). Plaintiff does not appear to dispute the accuracy of Defendants' exhibits, and, in fact, cites to Defendants' exhibits for arguments in his Response. (*See* Resp. 10:19–28 nn.8–15, ECF No. 12). The Court thus can rely on Defendants' exhibits in ruling on Defendants' Motions to Dismiss, without converting them into motions for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

perform procedures at the Center for any reason or (B) to meet the Physician Eligibility Requirements . . . .

(*Id.* at 39–41). The "Definitions" section in the LPA 2014 correspondingly provides standards outlining the "Physician Eligibility Requirements." (*Id.* at 12–14).

Prior to the LPA 2014's approval, the Limited Partners received a proposal that outlined and explained the LPA 2014's proposed new requirements. (Partnership's Proposal to Amend at 2–7, Ex. 2 to MTD, ECF No. 6-3). That proposal also disclosed the LPA 2014's intent to comply with federal law under the "Anti-kickback statute," though the proposal similarly explained that amendment would only seek to comply with "most tenets" of that statute. (*Id.* at 3).

Notably, Plaintiff does not allege that he met the LPA 2014's "Physician Eligibility Requirements"; and Plaintiff's Complaint reveals that the General Partner exercised its repurchase option roughly one year after the LPA 2014's approval because Plaintiff failed to meet those requirements. (Compl. ¶¶ 34–35) ("You are hereby notified that the General Partner [SURGICARE] has exercised its right to repurchase your interest effective October 1, 2015 . . . for an 'Agreed Value' of $16,880.00 pursuant to the Amended and Restated Limited Partnership Agreement."); (*see id.*) (showing the LPA 2014's approval date of November 20, 2014). Thus, assuming the LPA 2014 to be validly passed, all limited partners would have been aware, prior to their approval, of these new obligations for Limited Partners, the mechanics of the repurchase transaction, and the amendment's desire to comply (though not completely) with federal law. As a result, Plaintiff's current allegations do not plausibly reveal that the repurchase of his Units was caused by reliance on material omissions or misrepresentations as identified in the Complaint.

**B. Leave to Amend**

Federal Rule of Civil Procedure 15 permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]n dismissing for failure to state a claim under

Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Based on the evidence attached to Plaintiff's Response, Plaintiff could potentially amend his Complaint and raise an issue of fact about whether his federal securities fraud claim falls within the applicable two-year statute of limitations period. (*See* Email, Ex. A to Resp., ECF No. 12-1); (Resp. 24:6–12, ECF No. 12). Plaintiff also may be able to allege additional facts for his federal securities fraud claim that cure the deficiencies identified in this Order. Thus, the Court cannot definitively state that amendment would be futile. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).[4] Plaintiff therefore may file an amended complaint within twenty-one days from the date of this Order. Failure to timely file an amended complaint will result in dismissal of the federal securities fraud claim with prejudice.

**C. Jurisdiction**

The sole basis for Defendants' removal of this matter from Nevada State Court to this Court was Plaintiff's federal securities fraud claim, for which this Court has jurisdiction under 28 U.S.C. § 1331. (Pet. Removal 2:10–23, ECF No. 1); *see Arco Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of Montana*, 213 F.3d 1108, 1117 (9th Cir. 2000) ("The

---

[4] Though the Court allows Plaintiff leave to amend, amendment cannot remove the alternative pleading style for the federal securities fraud claim because such action would be futile. Were Plaintiff to amend the securities fraud claim by removing its alternative nature, thus pleading the claim to exist even if the LPA 2014 were found void, the claim fails because Plaintiff's forced sale of his Unit would be invalid. As Plaintiff states in his Response, a securities fraud claim cannot exist without the Unit's sale. (Resp. 21:15–18, ECF No. 12) ("If the amendment to add the 'repurchase option' is void, vis-a-vis [Plaintiff], due to the failure to obtain his consent to the Restated LPA, the entire argument regarding a securities fraud is not applicable, there having been no 'sale' of a security."); *see Thompson v. Paul*, 547 F.3d 1055, 1062 (9th Cir. 2008) (a claim for securities fraud requires "a connection between the misrepresentation or omission and the purchase or sale of a security . . . .").

Notice of Removal 'cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.'") (quoting *O'Halloran v. University of Washington*, 856 F.2d 1375, 1381 (9th Cir. 1988)). Had the Court dismissed Plaintiff's federal claim with prejudice, the Court would have the discretion to retain the remaining state law claims in this case pursuant to 28 U.S.C. § 1367(c); and the Court may exercise that discretion *sua sponte*. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)."); *Nugent v. Las Vegas Metro Police Dep't*, No. 2:09-CV-00601-GMN, 2010 WL 3810145, at *5 (D. Nev. Sept. 22, 2010). In reaching a decision to discretionarily decline supplemental jurisdiction, the Court considers "how declining jurisdiction serves the objectives of economy, convenience and fairness to the parties, and comity." *Trs. of Construction Indus. & Laborers Health and Welfare Tr. v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

Here, had the Court not provided Plaintiff an opportunity to amend the Complaint, the Court would have discretionarily declined to retain the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). This case is in the early stages of litigation, and the Court has not taken substantive action on Plaintiff's state law claims. Thus, the likelihood of duplicative action or prejudice upon remand would be minimal. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."); *Love v. Culligan Water Co. of Nevada*, No. 2:10-cv-129-JCM-PAL, 2011 WL 1882379, at *4 (D. Nev. May 16, 2011). Similarly, under § 1367(d), the statute of limitations for Plaintiff's state-law claims are "tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Thus, Plaintiff's claims would not be time-barred if the Court declined to exercise supplemental

jurisdiction and remanded this matter. *Morimoto v. Whitley*, No. 2:17-cv-01774-APG-GWF, 2018 WL 5621855, at *7 (D. Nev. Oct. 30, 2018).

Consequently, if Plaintiff elects not to amend his federal securities fraud claim within twenty-one days of this Order, the Court will dismiss that claim with prejudice and remand all remaining state-law claims to the Eighth Judicial District Court of Clark County, Nevada. Further, because the Court's jurisdiction is unclear at this time, the Court denies Defendants' Motions to Dismiss, (ECF Nos. 6, 26), without prejudice regarding the remaining state-law claims. Defendants may refile their Motions if Plaintiff elects to amend the Complaint.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss, (ECF Nos. 6, 26), are **GRANTED in part** and **DENIED in part**, **without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's seventh claim for securities fraud pursuant to the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), is **DISMISSED without prejudice**. Plaintiff shall have twenty-one (21) days from the date of this Order to file an amended complaint.

**IT IS FURTHER ORDERED** that, if Plaintiff elects not to amend the Complaint within twenty-one (21) days of this Order, Plaintiff's federal securities fraud claim will be dismissed with prejudice and the remaining state-law claims in this matter will be remanded to the Eighth Judicial District Court of Clark County, Nevada.

**DATED** this __30__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court